1
2
3
4
5
6
7

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

8
9
10
11
12
13

| Demetrius Lemus, | ) | CV 10-00101-TUC-JMR (JM) |
|---|---|---|
| Petitioner, | ) | |
| | ) | |
| v. | ) | **REPORT AND** |
| | ) | **RECOMMENDATION** |
| Lionel C. Apker, | ) | |
| | ) | |
| Respondent. | ) | |

14      Petitioner Demetrius Lemus filed a *pro se* Petition for Writ of Habeas Corpus (Doc.

15  1) pursuant to 28 U.S.C. § 2241.  The matter was referred to a United States Magistrate Judge

16  pursuant to 28 U.S.C. § 626(b)(1)(B) and Local Rule – Civil 72.1(b).  Petitioner has also

17  filed a Motion for Summary Judgment (Doc. 11).  Because the habeas petition and the

18  summary judgment motion raise the same claims and issues, they are both addressed in the

19  report and recommendation.  As discussed below, the Magistrate Judge recommends that

20  both the petition and motion be denied and that this case be dismissed.

21  **I.      Background**

22      Petitioner, who at the time of filing was incarcerated at USP Tucson, was previously

23  incarcerated at FCI Williamsburg, South Carolina.  In his petition, Petitioner claims that,

24  while incarcerated in South Carolina, 27 days of Good Conduct Time ("GCT") was revoked

25  based on conduct that did not violate a prison rule. *Petition*, p. 3.  Petitioner further contends

26  that the revocation proceedings violated his due process rights and the prison's internal rules

27  and policies, and was based on faulty evidence. *Petition*, pp. 3-4.

28

The incident underlying the revocation occurred in the evening on March 18, 2008, at the FCI Williamsburg in Salters, South Carolina. Petitioner was attending a culinary arts class taught by Makeishia Rich. Petitioner contends he was leaving the building to return to his housing unit when Rich

> accosted him and demanded that he remove the hat that he had just placed on his head – as he was preparing to leave the building. When he attempted to explain his actions, Teacher Rich ordered him into the office. Upon entering the office, Petitioner immediately removed his hat, however Rich continued to berate Petitioner. When he tried to explain himself, Rich ordered him to leave and then threatened to escalate the situation if he persisted. He politely informed Rich that the next night he would remember to remove his hat and follow her orders and then he exited the office.

*Petition*, pp. 7-8.

Respondents agree about the when and where the incident occurred, but describe the incident differently:

> Makeishia Rich, a Teacher in the Education Department approached Petitioner and ordered him to remove his hat and go back into the library until the next inmate movement was called. Petitioner then responded that he did not have to remove is [sic] hat because his class was over. Ms. Rich then ordered Petitioner to come to the front office Area. She advised Petitioner that when a staff member orders him to do something, he needs to comply. She then told Petitioner he was excused, but he refused to leave the office area. She then advised Petitioner she would contact the Compound Officer if he refused to leave the area. Petitioner then responded, "Ms. Rich one of these nights you are going to remember this."

*Answer and Response*, pp. 2-3.

Rich reported the incident on the same day it occurred and Petitioner was charged with: "Insolence towards a staff member;" "Refusing to obey a direct order of any staff;" and "Threatening another with bodily harm or any other offense." *Answer and Response*, Exhibit 1, Attachment 3 (Incident Report). The matter was investigated by Lieutenant C. Jones. The Incident Report reflects that Petitioner was advised of his institutional disciplinary rights and provided a copy of the report. Petitioner indicated he understood his rights and stated, "I

2

didn't say that to her.  I always respect her."  *Id*.  Lieutenant Jones comments and conclusions were as follows:

> Based on the statement of the reporting Officer as provided in section 11 [of the incident report], and further based on [Petitioner's] statement I find this report to be accurate and the charge to be valid.

*Id*.  On March 19, 2008, Petitioner was placed in Special Housing and the matter was referred to the Unit Disciplinary Committee ("UDC").  *Id*.

On March 20, 2008, Petitioner was given a notice of "Inmate Rights at Discipline Hearing" that listed seven inmate rights in matters referred to the Discipline Hearing Officer ("DHO") for disposition.  *Id*.  The rights described include the right to have a written copy of the charges, the right to be represented by a staff member, the right to call witnesses, the right to remain silent or present a statement, and the right to appeal the decision of the DHO "by means of the Administrative Remedy Procedure to the Regional Director within 20 calendar days of notice of the DHO's decision and disposition."  Petitioner signed to acknowledge the receipt of the notice of rights.  *Id*.  Petitioner elected not to have a staff representative and indicated he would present one witness, Inmate Rahsaan Felix, who was expected to testify about Petitioner's demeanor and that he was not disrespectful or threatening.  *Id*.  On March 21, 2008, the UDC issued its recommendation that the charge of threatening another with bodily harm be dismissed and that Petitioner committed the remaining two charges.  The UDC recommended that Petitioner lose his phone and commissary privileges for six months.  *Id*.

On April 2, 2008, Petitioner appeared before DHO J. ComStock, who reviewed with Petitioner his due process rights and conducted a hearing.  *Answer and Response*, Exhibit 1, Attachment 3 (Discipline Hearing Officer Report).  The DHO concluded that:

> Based on the reporting staff member's statement and eyewitness account of the incident, your staff representative's statement and your statement during the hearing, the DHO finds you did commit the prohibited acts of Threatening Another With Bodily Harm, Insolence to a Staff Member and Refusing to Obey an Order, codes 203/312/307.

3

1   *Id*. Based on these findings, Petitioner's telephone and commissary privileges were revoked

2   for 180 days, he was punished with 15 days of disciplinary segregation, and 27 days of good

3   conduct time was disallowed. *Id*. The DHO's report was delivered to Petitioner on April 17,

4   2008. *Id*.

5        Petitioner appealed the DHO's decision to the Southeast Regional Office on May 9,

6   2008. *Id*., Attachment 4 (Administrative Remedy Generalized Retrieval). The appeal was

7   rejected because Petitioner used the appeal form, identified as BP-10, as a continuation sheet

8   for his complaint. *Id.* On June 9, 2008, Petitioner resubmitted his complaint and it was again

9   rejected, this time because it was untimely. *Id*. Petitioner then filed an administrative

10   remedy at the Central Office level and it too was rejected based on the untimely filing at the

11   Regional Office level. *Id*.

12        In the instant Petition, Petitioner alleges that he did not commit the alleged offenses

13   and that the revocation of his good conduct time violated his due process rights.

14   Respondents assert that Petitioner failed to exhaust his administrative remedies and that

15   Petitioner was afforded due process and was properly subjected to discipline.

16   **II.   Discussion**

17       **A.   Exhaustion**

18        Section 2241 does not specifically require inmates to exhaust their administrative

19   remedies before filing a habeas corpus petition. 28 U.S.C. § 2241; *Huang v. Ashcroft*, 390

20   F.3d 1118, 1123 (9th Cir. 2004). However, as a "prudential matter," a court may require a

21   federal inmate to exhaust his administrative remedies before seeking relief under section

22   2241. *Laing v. Ashcroft*, 370 F.3d 994, 997 (9th Cir. 2004). A court may waive the

23   exhaustion requirement where administrative remedies are inadequate, futile, or pursuit of

24   them would cause irreparable harm. *Id*. at 1000-01.

25        The Bureau of Prisons has established an administrative remedy process to address

26   prisoners' complaints about any aspect of imprisonment. *See* 28 C.F.R. § 542.10 *et seq.*;

27   *Nigro v. Sullivan*, 40 F.3d 990, 992 (9th Cri. 1994). The process requires an inmate to

28

proceed through four levels of review: (1) an attempt at informal resolution with institutional staff; (2) a formal written administrative remedy request to the Warden; (3) an appeal to the BOP Regional Director; and (4) an appeal to the BOP General Counsel.  28 C.F.R. §§ 542.13-542.15.

In this case, Respondent alleges that Petitioner failed to exhaust his remedies because his re-submission at the Regional level was deemed untimely.  Specifically, Respondent states the Petitioner's re-submission at the Regional level "was rejected as untimely because Petitioner exceeded the time he was provided to re-submit this remedy."  *Answer*, p. 4. Although the Court has no reason to doubt this assertion, the record does not reflect the due date for the re-submission.  The Administrative Remedy Generalized Retrieval printout submitted by Respondent clearly reflects that Petitioner was advised that he was required to resubmit his complaint using the proper forms.  However, despite extended scrutiny, the Court is unable to locate or decipher the extended deadline on the document. *See Answer*, Attachment 4 (Administrative Remedy Generalized Retrieval dated March 9, 2010).

Even if Petitioner was tardy in re-submission, it does appear that he made substantial efforts to exhaust his administrative remedies.  He submitted his first complaint, which was rejected, submitted his second complaint, which was rejected as untimely, and finally appealed to the Central Office level, which rejected his claim based on his untimeliness at the Regional level.  As such, excusing Petitioner's alleged failure to fully exhaust will not encourage the deliberate bypass of the administrative scheme. *See, e.g.*, *Noriega-Lopez v. Ashcroft*, 335 F.3d 874, 880-81 (9th Cir. 2003) (noting such concerns).  Moreover, exhaustion at this point would be largely futile because, as discussed below, Petitioner's claim is clearly meritless under the applicable standards.

**B.     Due Process**

**1.     Standards**

An inmate who is subject to the loss of a statutorily created liberty interest such as the good time credits at issue here is entitled to some due process protections. *Wolff v.*

5

1  *McDonnell*, 418 U.S. 539, 563-66 (1974).  In the context of prison disciplinary proceedings,

2  prison officials must: (1) provide advance written notice of the disciplinary violation; (2)

3  allow the charged inmate an opportunity to call witnesses and present documentary evidence

4  in his defense when doing so "will not be unduly hazardous to institutional safety or

5  correctional goals;" and (3) to provide a written statement by a factfinder as to the evidence

6  relied upon and the reason for the disciplinary action.  *Id*. at 563-66.

7         Substantive due process is satisfied in prison disciplinary proceedings if there is

8  "some evidence" of a disciplinary infraction.  *Superintendent v. Hill*, 472 U.S. 445, 447

9  (1985).  "Ascertaining whether this standard is satisfied does not require examination of the

10  entire record, independent assessment of the credibility of the witnesses, or weighing of the

11  evidence."  *Id.* at 455-56.  Rather, "the relevant question is whether there is any evidence in

12  the record that could support the conclusion reached by the disciplinary board."  *Id.*; *Bostic*

13  *v. Carlson*, 884 F.2d 1267, 1270 (9th Cir. 1989).

14        **2.**    **Analysis**

15         Petitioner cites *Wolff* and claims the violation of his procedural due process rights.

16  His first specific allegation is that the DHO provided "[n]o explanation for ignoring [the]

17  witness [Rahsaan Felix] who said I left the office . . . ."  *Petition*, p. 14.  Petitioner

18  characterizes Felix's testimony as exculpatory and, as such, requiring an explanation as to

19  why it was disregarded.  Petitioner is wrong.  In her decision, DHO ComStock told Petitioner

20  that she:

21               considered your statements that you did not make those

22               statement to the staff member.  Additionally, your requested
             witness stated you did remove your hat and did not have a bad

23               attitude.  However, your witness was not in the office with you
             and the staff member and he did not witness the conversation

24               that took place between you and the staff member.

25  *Answer*, Attachment 3, p. 2.  This entry explains why the DHO did not consider Felix's

26  testimony as exculpatory and explains why it was disregarded.  Felix was not in the room

27  when the pertinent comment was allegedly made.  Through this finding, the DHO fulfilled

28  any obligation to address Felix's testimony.

Petitioner next complains that there was "[n]o explanation for ignoring both the officer's statement and the witnesses' [sic] statement that the hat WAS removed." The record does not support Petitioner on this point. The DHO expressly noted that the staff member observed Petitioner standing in the hallway with his hat on and that Petitioner "was instructed to remove [his] hat and return to the library . . .," and responded to the instruction saying, "I don't have to remove my hat, class is over." *Id.* As the record is not in accord with Petitioner's description of the evidence, the requested explanation was unnecessary to the decision.

Petitioner contends that he did not receive adequate notice of one of the charges against him. This claim is based on the recommendation of the UDC in his March 21, 2008, Incident Report that the charge of threatening another with bodily harm be dismissed. *Answer*, Attachment 3 (Incident Report). Petitioner contends that because the UDC recommended the dismissal of this charge, he had no reason to prepare to defend himself on that charge in the DHO proceeding. Petitioner's claim is undermined by the fact that the section under which the dismissal recommendation appears requests a "Recommendation if Referred to DHO (Contingent upon DHO Finding Inmate Committed Prohibited Act)." Thus, not only is the statement made as a recommendation, it appears in a section provided for recommendations to the DHO. Contrary to Petitioner's claim, the statement from the UDC was not that the "charge was to be expunged." Quite clearly, it was only a recommendation to the DHO and Petitioner had ample notice of this fact.

The next claim is that "there was no logical explanation in the report for what offense was 'threatened . . . .'" *Petition*, p. 16. The only requirement to uphold the substantive claim against Petitioner is that there be "any evidence in the record that could support the conclusion of the disciplinary board." *Bostic*, 884 F.2d at 1270. When an inmate makes the statement to a staff member after a confrontation that "one of these nights you are going to remember this," the impression left is nothing other than that the inmate is threatening bodily injury of some sort. Nevertheless, Petitioner asserts that the statement can just as readily be

1  understood as indicating that the inmate intends to file a grievance or pursue legal action.

2  In a non-penal setting, Petitioner's assertion might be worth some consideration, however,

3  in a prison setting that is not the case. The statement is readily understood as threatening

4  bodily harm and the DHO's decision is supported by sufficient evidence supporting her

5  determination.

6        Petitioner next claims that he would not have waived his right to assistance at the

7  DHO hearing if he had known he was still facing the threatening charge that was

8  recommended for dismissal by the UDC. As discussed above, it was unreasonable for

9  Petitioner to take the UDC's recommendation of expungement as a final decision and thus

10  his decision to decline assistance on this basis was also unreasonable.

11        Petitioner's remaining claims are based on the faulty assertion that the DHO could not

12  resolve the claims previously decided by the UDC. He claims that the threatening charge

13  was resolved by the UDC, but that was only a recommendation. He points out that the DHO

14  "may not hear any case or impose any sanctions in a case not heard and *AND REFERRED*

15  by the UDC." The UDC's Incident Report expressly states that "The Committee is referring

16  the charge(s) to the DHO for further hearing." *Answer*, Attachment 3. His claims are

17  therefore meritless.

18  **III. RECOMMENDATION FOR DISPOSITION BY THE DISTRICT JUDGE**

19        Based on the foregoing, the Magistrate Judge **RECOMMENDS** that the District

20  Court, after its independent review, **DISMISS WITH PREJUDICE** Petitioner's Petition for

21  Writ of Habeas Corpus [Doc. No. 1], and **DENY** Petitioner's Motion for Summary

22  Judgement [Doc. No. 11].

23        This Recommendation is not an order that is immediately appealable to the Ninth

24  Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of

25  Appellate Procedure, should not be filed until entry of the District Court's judgment.

26        However, the parties shall have fourteen (14) days from the date of service of a copy

27  of this recommendation within which to file specific written objections with the District

28                                                  8

1   Court.  *See* 28 U.S.C. § 636(b)(1) and Rules 72(b), 6(a) and 6(e) of the Federal Rules of Civil

2   Procedure. Thereafter, the parties have fourteen (14) days within which to file a response to

3   the objections. If any objections are filed, this action should be designated case number: **CV**

4   **10-00101-TUC-JMR**.  Failure to timely file objections to any factual or legal determination

5   of the Magistrate Judge may be considered a waiver of a party's right to *de novo*

6   consideration of the issues.  *See United States v. Reyna-Tapia* 328 F.3d 1114, 1121 (9th Cir.

7   2003) (*en banc*).

8        DATED this 5th day of January, 2011.

9

10

11                              Jacqueline Marshall
                                United States Magistrate Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                    9